**DOODY, Appellant,**

v.

**CENTERIOR ENERGY CORPORATION et al., Appellees.**

[Cite as *Doody v. Centerior Energy Corp.* (2000), 137 Ohio App.3d 673.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 98–L–235.

Decided May 22, 2000.

674

*Merrie Frost* and *R. Jack Clapp*, for appellant.

*Richard P. Goddard* and *Wendy E. Stark*, for appellee Centerior Energy Corporation.

NADER, Judge.

Appellant, Kevin Doody, appeals the judgment issued by the Lake County Court of Common Pleas, directing a verdict in favor of appellees, Centerior Energy Corporation and Sun Lee.

Appellant was employed as a radiological engineer by the Cleveland Electric Illuminating Company ("CEI") and worked at the Perry Nuclear Power Plant from August 14, 1995 through March 19, 1997. Appellant was hired to investigate potential safety issues and work on measures to keep radiation exposure at the plant "as low as is reasonably achievable" ("ALARA").[1] During the course of his employment, appellant became concerned about some of the safety precautions being taken at the plant. He reported the following concerns to his supervisor, Sun Lee: (1) workers were exposed to too much radiation while they performed certain maintenance work, (2) tools used to handle radioactive material were being stored outside the protected area, and (3) his assignment as a Radiation Monitoring Team Leader was a safety violation because he had not received the appropriate training.

According to appellant, after he began reporting his concerns, his supervisor began intimidating and harassing him. In August 1996, appellant reported his concerns to the Nuclear Regulatory Commission ("NRC"). In March 1997, appellant's employment at the plant was terminated. Following his discharge, appellant filed a lawsuit on March 20, 1997, naming Centerior Energy Corporation, Centerior Service Corporation, Ohio Edison, First Energy, and his supervisor, Sun Lee, as defendants. In his complaint, appellant alleged that defendants had violated the Ohio Whistleblower Protection Act, Ohio's public policy exception

---

1. The Code of Federal Regulations provides the following definition of ALARA:

" ALARA (acronym for 'as low as is reasonably achievable') means making every reasonable effort to maintain exposures to radiation as far below the dose limits in this part as is practical consistent with the purpose for which the licensed activity is undertaken, taking into account the state of technology, the economics of improvements in relation to state of technology, the economics of improvements in relation to benefits to the public health and safety, and other societal and socioeconomic considerations, and in relation to utilization of nuclear energy and licensed materials in the public interest." Section 20.1003, Title 10, C.F.R.

to the employment at-will doctrine, and had intentionally inflicted emotional distress upon him. On December 22, 1997, appellant filed an amended complaint, adding claims for fraud and spoliation of evidence.

On July 13, 1998, a jury trial on appellant's claims commenced. On July 15, 1998, appellant voluntarily dismissed Centerior Service Corp., Ohio Edison, and First Energy, leaving Centerior Energy Corp. and Sun Lee. He also dismissed the claim of spoliation of evidence against the remaining defendants. After presentation of all of the evidence but before closing arguments, defendants moved for a directed verdict on all of the remaining counts of the amended complaint. On July 16, 1998, the trial court granted the motion for directed verdict. On July 29, 1998, appellant filed a motion for reconsideration and a motion for a new trial pursuant to Civ.R. 59. On October 1, 1998, the trial court denied both of appellant's motions. From this judgment, appellant assigns the following errors [2]:

"[1] The trial court erred to the prejudice of the plaintiff-appellant in granting defendant-appellees' motion for a directed verdict on all pending claims.

"[2] The trial court erred to the prejudice of the plaintiff-appellant when it granted defendant-appellees' motion for costs for defending depositions without a hearing on the matter."

In his first assignment of error, appellant contends that the trial court erred by granting appellees' motion for directed verdict on appellant's claims for (1) violating Ohio's whistleblower statute, (2) wrongfully terminating him in violation of Ohio's public policy exception to the employee-at-will doctrine, (3) intentional infliction of emotional distress, and (4) fraud.

We will first address whether the trial court properly granted appellees' motion for directed verdict on the first count of appellant's complaint, violation of Ohio's whistleblower statute. Civ.R. 50(A)(4) provides the standard for granting directed verdicts:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

---

2. *Although appellant filed a notice of appeal from the judgment denying his motion for a new trial, his appeal is from the judgment granting appellees' motion for a directed verdict. Weissenberger's Ohio Civil Procedure, 2000 Litigation Manual, p. 402 ("An appeal following the denial of a motion of a new trial should be an appeal on the judgment itself, not on the order denying the motion requesting the new trial").*

■ Whether a motion for a directed verdict should be granted is a question of law. *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 74, 529 N.E.2d 464, 467.

Appellant contends that he should have been afforded protection as a whistle-blower pursuant to R.C. 4113.52.[3] In *Contreras v. Ferro Corp.* (1995), 73 Ohio St.3d 244, 652 N.E.2d 940, syllabus, the Supreme Court of Ohio held:

---

3.  R.C. 4113.52 provides (see 143 Ohio Laws, Part IV, 5930, 5945-5946):

"(A)(1)(a) If an employee becomes aware in the course of his employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that his employer has authority to correct, and if the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify his supervisor or other responsible officer of his employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the employee may file a written report that provides sufficient detail to identify and describe the violation with the prosecuting authority of the county or municipal corporation where the violation occurred, with a peace officer, with the inspector general if the violation is within his jurisdiction, or with any other appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which he is engaged.

"(b) If an employee makes a report under division (A)(1)(a) of this section, the employer, within twenty-four hours after the oral notification was made or the report was received or by the close of business on the next regular business day following the day on which the oral notification was made or the report was received, whichever is later, shall notify the employee, in writing, of any effort of the employer to correct the alleged violation or hazard or of the absence of the alleged violation or hazard.

"* * *

"(3) If an employee becomes aware in the course of his employment of a violation by a fellow employee of any state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of his employer and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify his supervisor or other responsible officer of his employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation.

"(B) Except as otherwise provided in division (C) of this section, no employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(1) or (2) of this section, or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under either such division. No employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(3) of this section if the employee made a reasonable and good faith effort to determine the accuracy of any information so reported, or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under that division. For purposes of this division, disciplinary or retaliatory action by the employer includes, without limitation, doing any of the following:

"(1) Removing or suspending the employee from employment;

"(2) Withholding from the employee salary increases or employee benefits to which the employee is otherwise entitled;

"In order for an employee to be afforded protection as a 'whistleblower,' such employee must strictly comply with the dictates of R.C. 4113.52. Failure to do so prevents the employee from claiming the protections embodied in the statute."

■ The trial court determined that appellant did not strictly comply with the dictates of R.C. 4113.52 because appellant did not demonstrate that he reasonably believed that there was a criminal violation that was likely to cause an imminent risk of physical harm to persons or a criminal violation that was likely to cause a hazard to public health or safety. Appellant contends that he strictly complied with the statute because he reasonably believed that appellees committed a criminal violation that was likely to cause a hazard to the health and safety of workers at the Perry plant. Appellant testified that exposure to low levels of radiation could cause future health problems for the workers at the Perry plant. Appellant further testified that he believed that appellees violated the law because federal law requires nuclear power plants to keep radiation levels as low as is reasonably achievable and that the workers at Perry were exposed to more radiation than necessary. Appellant conceded that the levels of radiation were not immediately harmful to the employees and did not pose a risk to public health or safety.

■ R.C. 4113.52 protects only those individuals who "reasonably believe the violation is either (a) a criminal offense that is likely to cause either (i) an imminent risk of physical harm to persons or (ii) a hazard to public health or safety, OR (b) is a felony." *Brooks v. Martin Marietta Util. Services, Inc.* (C.A.6, 1998), 166 F.3d 1213, 1998 WL 739890. Appellant did not present any evidence that he believed that the safety concerns he raised involved an imminent risk of harm to the workers at the plant. Furthermore, appellant did not present any evidence that the activity at the Perry plant posed a threat to the health or safety of the public. Because appellant believed that appellees committed a criminal violation that would pose a potential risk to the health and safety of the workers at the plant and not an imminent risk of harm to them, he did not strictly comply with R.C. 4113.52. The trial court did not err by granting appellees' motion for directed verdict on count one of appellant's complaint. This portion of appellant's first assignment of error has no merit.

---

"(3) Transferring or reassigning the employee;

"(4) Denying the employee a promotion that otherwise would have been received;

"(5) Reducing the employee in pay or position.

"(C) An employee shall make a reasonable and good faith effort to determine the accuracy of any information reported under division (A)(1) or (2) of this section. If the employee who makes a report under either division fails to make such an effort, he may be subject to disciplinary action by his employer, including suspension or removal, for reporting information without a reasonable basis to do so under division (A)(1) or (2) of this section."

We will next address whether the trial court properly granted appellees' motion for directed verdict on the second count of appellant's complaint. In count two of his complaint, appellant alleged that appellees violated Ohio's public policy exception to the employment-at-will doctrine. This exception was first set forth in *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981. In *Greeley,* the Supreme Court of Ohio held that "[i]n Ohio, a cause of action for wrongful discharge in violation of public policy may be brought in tort." *Id.* at paragraph three of the syllabus.

The trial court determined that appellant could not have an independent cause of action for wrongful termination in violation of public policy because the tort claim was dependent upon complying with R.C. 4113.52, the whistleblower statute. The trial court relied on *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 677 N.E.2d 308, which held:

"An at-will employee who is discharged or disciplined in violation of the public policy embodied in R.C. 4113.52 may maintain a common-law cause of action against the employer pursuant to *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, and its progeny, so long as that employee had fully complied with the statute and was subsequently discharged or disciplined." *Id.* at paragraph three of the syllabus.

The trial court correctly determined that appellant was precluded from bringing a common-law claim for wrongful termination based on the violation of the public policy embodied in R.C. 4113.52 because he did not comply with that statute; however, the trial court improperly concluded that appellant had no *Greeley* claim solely because he did not comply with the whistleblower statute. In *Kulch,* the Ohio Supreme Court further held:

"An at-will employee who is discharged or disciplined for filing a complaint with the Occupational Safety and Health Administration concerning matters of health and safety in the workplace is entitled to maintain a common–law tort action against the employer for wrongful discharge/discipline in violation of public policy pursuant to *Greeley* * * *." *Id.* at paragraph one of the syllabus.

The court identified two sources of public policy that would support Kulch's *Greeley* claim: (1) Ohio's public policy of protecting employees who file Occupational Safety and Health Act ("OSHA") complaints concerning unsafe or unhealthy conditions from retaliation and (2) R.C. 4113.52, which embodies a Ohio's public policy protecting whistleblowers. The court determined that an employee is entitled to maintain a *Greeley* claim against his employer whether or not the employee complies with the dictates of R.C. 4113.52 if he can identify a source of public policy separate from the public policy embodied in R.C. 4113.52. *Id.,* 78 Ohio St.3d at 162, 677 N.E.2d at 328–329.

In the instant case, appellant contends that retaliation against an employee who reports safety concerns to the NRC is an affront to Ohio's public policy; therefore, the trial court improperly granted a directed verdict on his *Greeley* claim. In *Kulch*, the court explained that courts should follow the analysis set forth in *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, in order to determine whether an employee has a viable common-law cause of action under *Greeley* for tortious wrongful discharge in violation of public policy. In *Painter*, the court wrote:

"In reviewing future cases, Ohio courts may find useful the analysis of Villanova Law Professor H. Perritt, who, based on review of cases throughout the country, has described the elements of the tort as follows:

" '1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

" '2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

" '3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

" '4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).' (Emphasis *sic*.)

"H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398–399." *Id.*, 70 Ohio St.3d at 384, 639 N.E.2d at 57, fn. 8.

In *Kulch*, the Supreme Court determined that a court considers only the clarity and jeopardy elements when questions of fact are not at issue. *Id.*, 78 Ohio St.3d at 151, 677 N.E.2d at 321, citing *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 652 N.E.2d 653. The court concluded that reporting safety concerns to OSHA satisfied the clarity and jeopardy elements of the tort because federal law protects employees from being discharged for filing complaints related to OSHA, which is consistent with Ohio's public policy in favor of workplace safety, and that public policy would be jeopardized if employers were allowed to fire employees for reporting matters to OSHA. *Id.*, 78 Ohio St.3d at 151, 154, 677 N.E.2d at 321, 323–324.

The same public policy concerns exist in the instant case. Section 5851(a), Title 42, U.S.Code, specifically prohibits employers from retaliating against employees who allege violations of the Atomic Energy Act of 1954 (Section 2011 *et seq.*, Title 42, U.S.Code) or the whistleblowing provisions included in the Energy Reorganization Act (Section 5851, Title 42, U.S.Code). Furthermore, as stated in *Kulch*, Ohio has a recognized public policy in favor of workplace safety.

This public policy would be jeopardized if employers were allowed to fire employees for reporting safety concerns to the NRC. Because appellant has identified a source of public policy to support his *Greeley* claim independent from the public policy embodied in R.C. 4113.52, the trial court erred by granting the motion of Centerior Energy Corp. for a directed verdict on appellant's *Greeley* claim.

Appellant may maintain a *Greeley* claim against Centerior Energy Corp.; however, appellant may not maintain such a claim against Sun Lee. Because a *Greeley* claim is one for wrongful discharge against one's employer and Sun Lee was not appellant's employer, the trial court properly dismissed appellant's *Greeley* claim against Sun Lee. See *Greeley, supra*, at paragraphs one and two of the syllabus. The portion of appellant's first assignment of error regarding the directed verdict in favor of appellee Centerior Energy Corp. has merit. The portion of appellant's first assignment of error regarding the directed verdict against Sun Lee has no merit.

■ Appellant also contends that the trial court erred by granting appellees' motion for a directed verdict on his claims for fraud and intentional infliction of emotional distress. Appellant's only argument in support of his contention is that the claims for fraud and intentional infliction of emotional distress are separate claims that exist regardless of whether he can prevail on a R.C. 4113.52 claim. Appellant is correct in his contention that fraud and intentional infliction of emotional distress are separate claims; however, we cannot address whether it was proper to grant appellees' motion for directed verdict on these claims because appellant merely states that he should be allowed to go forward on these claims. Pursuant to App.R. 16(A)(7), appellant must supply reasons in support of his contentions, with citations to the authorities, statutes, and parts of the record on which he relies. Because appellant has failed to set forth arguments to support his claimed error, we will not address it. See *Quinn v. Quinn* (Dec. 17, 1999), Geauga App. No. 98–G–2185, unreported, 1999 WL 1313621, at *3.

In appellant's second assignment of error, he alleges that the trial court erred by granting appellees' motion for costs for defending depositions without a hearing on the matter. R.C. 4113.52(E) authorizes a court to award the prevailing party all or a portion of the costs of litigation. It would be unfair to allow appellees to recover costs as a prevailing party under R.C. 4113.52, at this time, because appellant's *Greeley* claim is still pending. For that reason, we will not address appellant's second assignment of error, and the award of costs shall be stayed pending the outcome of this case on remand.

The judgment of the Lake County Court of Common Pleas as to Sun Lee is affirmed. The judgment as to Centerior Energy Corp. is affirmed in part,

reversed in part, and remanded to the trial court for action consistent with this opinion on appellant's *Greeley* claim against Centerior Energy Corp.

*Judgment accordingly.*

FORD, P.J., and CHRISTLEY, J., concur.