[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
In this accelerated calendar case, appellant, Carol Evans, appeals from the decision of the Trumbull County Court of Common Pleas, granting appellee, Physicians Hair Transplant Group, Inc., ("PHTG") summary judgment on appellant's claims for wrongful discharge and age discrimination.[1]
The following facts gave rise to this present matter. Appellant was an employee-at-will for PHTG from January 1998 until July 1999. During this time, Deborah S. Gould, a registered nurse, ("Mrs. Gould") and Mr. Robert Pinti ("Mr. Pinti"), a clinic technician, owned PHTG. Then, in October 1999, Dr. Joseph Ross ("Dr. Ross") became an owner as well.
On June 17, 1999, appellant allegedly observed Mr. Pinti perform a medical procedure on Mr. Eli Miller ("Mr. Miller") wherein he administered anesthesia, removed tissue, sutured the incision and then treated the area with antibiotics. Appellant reported her suspicions that Mr. Pinti had committed an illegal act, to wit: practicing medicine and/or surgery without a license, to Mrs. Gould. Appellant's employment was subsequently terminated on July 19, 1999. Appellant avers that she was discharged because she reported Mr. Pinti's alleged illegal conduct to Mrs. Gould.
As a result of these events, on December 3, 1999, appellant filed a complaint in the Trumbull County Court of Common Pleas, alleging two causes of action which are relevant to this appeal. First, appellant claimed that appellee wrongfully discharged her in violation of public policy after she allegedly reported to Mrs. Gould that she had "observed [Mr. Pinti] who was not a physician perform a complex medical procedure on a patient [Mr. Miller]." Appellant also accused appellee of age discrimination in violation of R.C. Chapter 4112.[2]
On February 5, 2001, appellee filed a motion for summary judgment arguing that appellant's claim for wrongful discharge in violation of public policy failed because she did not comply with the whistle blower statute, R.C. 4113.51, et seq. Further, appellee maintained that appellant could not seek protection of the whistle blower statute because the alleged complex medical procedure never occurred. Rather, appellee claimed that Mr. Pinti administered a "simple pimple" to the patient under the direction of the patient's surgeon, Dr. John J. Garro ("Dr. Garro").
As for the age discrimination claim, appellee argued that appellant was terminated for non-discriminatory reasons because PHTG was affiliating with University Hospitals of Cleveland and Dr. Joseph Ross was to become an owner of the corporation. As a result of these affiliations, appellant's secretarial position was eliminated and a new position was created. This new position included secretarial duties as well as assisting Dr. Ross in surgery as a technician and processing insurance claims. Further, appellee suggested that appellant did not possess the experience or skills for this new position as she only had limited secretarial skills.
To support its motion for summary judgment, appellee submitted an affidavit from Dr. Garro and portions of numerous depositions from appellant, Mr. Miller, Dr. and Mrs. Gould, Dr. Ross, Dr. Garro, and Mr. Pinti.[3]
In turn, on March 2, 2001, appellant filed a response in opposition to appellee's motion for summary judgment maintaining that issues of material fact existed which precluded summary judgment. Specifically, appellant attested that she had witnessed Mr. Pinti, who was only a technician, cleanse the affected area of Mr. Miller's head, inject anesthesia, remove tissue, and suture the incision without a doctor present on the phone or in the building. To support her wrongful discharge claim, appellant suggested that broad societal interest includes having only properly licensed medical practitioners administer anesthetic, remove tissue, and suture an incision.
As for her age discrimination claim, appellant argued that appellee's alleged business reason for discharging her was a sham. Appellant seemed to argue that her position with PHTG involved intense patient care rather than just secretarial duties. To support her contention, appellant submitted her affidavit.
Appellee filed a response to appellant's memorandum on March 8, 2001, arguing that other than appellant's self-serving affidavit, there was not a scintilla of evidence to defeat its motion for summary judgment.
After taking the matter under advisement, on April 30, 2001, the trial court granted appellee's motion for summary as to appellant's claims for wrongful discharge and age discrimination. It is from this judgment appellant appeals, advancing a single assignment of error and reiterating the arguments set forth in her response in opposition to appellee's motion for summary judgment
Before addressing the merits of appellant's lone assignment of error, we will lay out the appropriate standard of review.
An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co. 77 Ohio St.3d 102,105, 1996-Ohio-336. Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach only one conclusion, which is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C);Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385, 1996-Ohio-389; Leibreichv. A.J. Refrigeration, Inc. 67 Ohio St.3d 266, 268, 1993-Ohio-12; Bosticv. Connor (1988), 37 Ohio St.3d 144, 146.
Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turner v. Turner,67 Ohio St.3d 337, 340, 1993-Ohio-176, citing Anderson v. Liberty Lobby,Inc. (1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340
A party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresherv. Burt, 75 Ohio St.3d 280, 1996-Ohio-107. Accordingly, the moving party must specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. If the moving party satisfies its initial burden under Civ.R. 56(C), the nonmoving party has the burden to respond, by affidavit or as otherwise provided in the rule, so as to demonstrate that there is a genuine issue of fact. Id. However, if the nonmoving party fails to do so, then the trial court may enter summary judgment against that party. Id.
In the instant matter, appellant presents two issues for our review concerning the trial court's grant of summary judgment in favor of appellee as to her claim for wrongful discharge in violation of public policy and age discrimination. As such, we will address each one individually.
First, appellant submits that her claim for wrongful discharge in violation of public policy should have survived as a matter of law because the broad societal interest of this state includes having only properly licensed medical practitioners administer anesthetic, remove tissue, and suture an incision. Thus, appellant seems to argue that an employee who claims to have been terminated because she reported an alleged illegal act, to wit: unauthorized practice of medicine/surgery, to her supervisor should have a cause of action for wrongful discharge.
As an aside, we note that in her appellate brief, appellant attempts to cite to portions of her deposition that were never filed with the trial court or attached to her motion in opposition to summary judgment. Therefore, we will not consider those cites on appeal.
In the instant matter, appellant alleged the following Greeley tort claim for wrongful termination in violation of public policy:
 "15. The State of Ohio has a clear public policy requiring that certain medical procedures including the removal of tissue and administration of anesthesia be performed by duly licensed medical personnel.
 "16. The State of Ohio further has a clear public policy in insuring that unlawful medical procedures by unlicensed personnel are duly reported when observed for the purpose of protecting the public safety.
 "17. The wrongful acts of [appellee] in firing [appellant] for duly reporting said illegal acts by a lay person jeopardizes this public policy" (Emphasis added.)
With respect to her wrongful discharge claim, the trial court noted that appellant failed to comply with the mandates of the whistle blower statute. The court further stated that:
 "Although society is certainly interested in medical procedures being performed by trained professionals, this Court is not of the opinion that this set of circumstances would come within any definition of [appellant's] claimed broad societal interest. Therefore [appellant] may not prevail under public policy, wrongful termination."
Even though appellant was unable to establish a whistle blower claim under R.C. 4113.51, et seq., she was not barred from maintaining aGreeley claim, that is, a common law tort action against the employer for wrongful discharge in violation of public policy.[4] Appellant can maintain a Greeley claim whether or not she complied with R.C. 4113.52
"if [s]he can identify a source of public policy separate from the publicpolicy embodied in R.C. 4113.52." (Emphasis added.) Doody v. CenteriorEnergy Corp. (2000), 137 Ohio App.3d 673, 679. See, also, Kulch at 162;Iberis v. Mahoning Valley Sanitary Dist., 11th Dist. No. 2000-T-0036, 2001-Ohio-8809, 2001 Ohio App. LEXIS 5837, at 16. For the reasons that follow, we determine that appellant failed to do so.
In Painter v. Graley, 70 Ohio St.3d 377, paragraph three of the syllabus, 1994-Ohio-334, the Supreme Court of Ohio defined a clear public policy as follows:
 "`Clear public policy' sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law."
Furthermore, in Greeley v. Miami Valley Maintenance Contractors, Inc. (1990), 49 Ohio St.3d 228, 234-235, the Supreme Court stated:
 "Today, we only decide the question of a public policy exception to the employment-at-will doctrine based on violation of a specific statute. This is not to say that there may not be other public policy exceptions to the doctrine but, of course, such exceptions would be required to be of equally serious import as the violation of a statute." (Emphasis added.)
Thus, in determining whether appellant set forth a claim for wrongful discharge in violation of public policy, she had to satisfy the following elements: (1) a clear public policy manifested in a state or federal constitution, statute, administrative regulation, or common law (clarity element); (2) the discharge under such circumstances would jeopardize public policy (jeopardy element); (3) the discharge was motivated by conduct related to the public policy (causation element); and (4) the employer lacked an overriding legitimate business justification for the dismissal (overriding justification element).[5] Kulch at 151; Painter
at 384; Doody at 680; Bentley v. API Pattern Works, Inc., 11th Dist. No. 2000-L-140, 2001-Ohio-3921, 2001 Ohio App. LEXIS 4804, at 11-12; Gargasv. Streetsboro, 11th Dist. No. 2000-P-0095, 2001-Ohio-4334, 2001 WL 1077828, at 7. The clarity and jeopardy elements involve questions of law, while the causation and overriding justification elements are questions of fact. Kulch at 151.
As to the first prong, appellant suggests that there is a broad societal interest in Ohio to ensure the public safety by having only duly licensed professionals perform surgeries and practice medicine. We agree.
R.C. 4731.41 makes it a criminal offense to engage in the practice of medicine/surgery without a license from the state medical board. However, R.C. 4731.31 does not specifically prohibit an employer from terminating an employee who reports the unauthorized practice of medicine/surgery to a supervisor.
Rather, there is a specific public policy embodied in the whistle blower statute which "prohibits the retaliatory firing of an employee who reports to his employer some criminal offense or safety hazard occurring at the workplace." Wood v. Dorcas (1998), 126 Ohio App.3d 730, 736. So, if appellant wished to rely on the public policy embedded in the whistle blower statute to establish her Greeley claim, she had to comply with the requirements of R.C. 4113.51 et seq. Kulch at 153, 162. She did not.
Kulch allows an employee to maintain a claim under one or all of the following: (1) a statutory cause of action for violation of the whistle blower statute pursuant to R.C. 4113.51 et seq.; (2) a Greeley tort claim based on the public policy embodied in the whistle blower statute so longas the statutory requirements are met; and/or (3) a Greeley tort claim based on the public policy embedded in other sources, such as the Ohio and United States Constitution, administrative rules and regulations, and common law. Kulch at 150. Recovery, however, can only be under one theory. Id. at 162.
Further, the Kulch court held that:
 "* * * the legislature clearly intended to encourage whistleblowing only to the extent that the employee complies with the dictates of R.C. 4113.52. As we held in Contreras, supra, 73 Ohio St.3d 244, 652 N.E.2d 940, syllabus: `In order for an employee to be afforded protection as a "whistleblower," such employee must strictly comply with the dictates of R.C. 4113.52. Failure to do so prevents the employee from claiming the protections embodied in the statute.'" (Emphasis sic.]
 "* * * The obvious implication of Contreras is that an employee who fails to strictly comply with the requirements of R.C. 4113.42 cannot base a Greeley
claim solely upon the public policy embodied in that statute." Kulch at 153.
In the instant matter, appellant claims that her termination for reporting Mr. Pinti's alleged illegal medical procedure to her supervisor violates public policy. The essence of appellant's claim is that the public policy of this state encourages employees to report criminal conduct occurring in the workplace to their employers. However, as indicated, this particular public policy upon which appellant relies is specifically set out in the whistle blower statute. And, appellant's failure to comply with the statutory requirements of R.C. 4113.52 is fatal to her Greeley claim, as well as to any R.C. 4113.52 claim:
 "An at-will employee who is discharged or disciplined in violation of the public policy embodied in R.C. 4113.52
may maintain a common-law cause of action against the employer pursuant to Greeley * * *, and its progeny, so long as that employee had fully complied with the statute and was subsequently discharged or disciplined." Kulch at paragraph three of the syllabus.
Consequently, appellant could not rely on the public policy embedded in the whistle blower statute as the alleged clear violation of public policy. See, e.g., Davidson v. BP Am., Inc. (1997), 125 Ohio App.3d 643,649-651 (holding that an accounting firm employee who was discharged for reporting criminal conduct to his employer could not maintain a claim for wrongful discharge in violation of public policy where the public policies relied upon by the employee were embodied in the whistle blower statute and the employee failed to comply with the statute).
In summation, appellant has failed to identify a source of public policy other than R.C. 4113.51 et seq., to support her Greeley claim. Hence, the trial court properly granted appellee's motion for summary judgment.[6]
For her second issue, appellant posits that in her age discrimination claim, she set forth evidence to show that appellee's rationale for terminating her was pretextual. In Ohio, there are two ways a plaintiff/employee can establish a prima facie case for age discrimination: (1) present direct evidence of age discrimination; or (2) present indirect evidence that meets a four prong test announced inMcDonnell Douglas Corp. v. Green (1973), 411 U.S. 792. Mauzy v. KellyServices, Inc., 75 Ohio St.3d 578, paragraphs one and two of the syllabus, 1996-Ohio-265; Kohmescher v. Kroger Co. (1991),61 Ohio St.3d 501, syllabus; Burdine v. Avery Dennison Corp. (June 2, 2000), 11th Dist. No. 98-L-269, 2000 WL 714390, at 5-6.
In the instant matter, the parties failed to argue to the trial court the existence of direct evidence of discrimination. In fact, the trial court's decision was made using the indirect evidence and four prong test set out in McDonnell Douglas. As a result, this court will limit its analysis to the indirect evidence theory. Burdine at 6.
In order to establish a prima facie case of age discrimination, appellant had to demonstrate the following: (1) that she was a member of a protected class; (2) that she was terminated; (3) that she was qualified for the position; (3) that she was replaced by, or that her discharge permitted the retention of, a person not belonging to a protected class.Barker v. Scovill, Inc. (1983), 6 Ohio St.3d 146, paragraph one of the syllabus; Burdine at 6.
In the instant matter, no one seems to dispute that appellant is part of a protected class, that she was discharged from employment, and that she was replaced by a younger person not belonging to a protected class.[7] However, a review of the record shows that there is a factual dispute as to whether appellant's position at termination only included secretarial duties. The query then becomes whether the disputed facts were material.
For instance, Dr. and Mrs. Gould stated in their deposition testimony that appellant's job description was for a secretary/receptionist. In fact, Mr. Pinti stated that appellant's duties included working on the computer, answering the phones, and cleaning the office. According to Mr. Pinti, the only involvement appellant had in surgery was getting the patients something to drink.
However, appellant believes that her position as a secretary/receptionist was also technical in nature:
 "8. My work at PHTG, Inc. involved pre-surgery instructions to patients and the day of surgery I gave them medication, made sure they had eaten before surgery, checked on them during surgery to see how they were doing. After surgery, I gave the post-surgery instructions which included medications and how to take them. I cautioned them about potential swelling of the head and how to avoid it. I also instructed them on the correct cleansing of the graft sites and the donor area.
 "9. I had physical contact with patients. Sometimes as I was giving them their instructions the donor area would start to bleed. I would wipe the area with a wet cloth and apply mild pressure to stop the bleeding."
Even if we assume, arguendo, in favor of appellant that she had physical contact with patients, that she was involved in pre and post surgery instructions, and that she had some billing experience as she claims, appellant failed to present any evidence tending to show that she had the experience or training in assisting a physician during surgical procedures. Appellee presented evidence that this latter requirement was a new and essential component of the replacement position. Further, appellant acknowledged during her deposition that she did not possess a medical background and never provided assistance during surgery.
As for appellant's replacement, Dr. Ross explained that Ms. Baxter replaced appellant in July 1999, and that she was chosen for the new position because she had surgical abilities and technical experience:
 "To the best of my knowledge, [Ms. Baxter's] duties were being a receptionist, answer the phones, schedule appointments, provide information to the patients, to help during procedure, to administer to the patient's needs * * * and also to finish up her training to help as a technician in the surgery itself."
 "She had technical experience in physicians' offices performing procedures prior to joining us. Although she did not have specific training for transplant surgery, we felt that with her previous training and surgical abilities that she would be able to pick up the transplant training very quickly, and she did actually pick up things quickly, and get into the role of helping out as a technician well as a receptionist."
Appellant claims that appellee did not offer her an opportunity to train for the new position. However, appellant did not present evidence tending to show that she had technical/surgical experience or training which would enable her to adequately handle and carry out the duties of the new position. Thus, from our review of the record, we conclude that appellant failed to set forth evidence to establish that she was equally or similarly qualified for the new position.
Even if we assume, arguendo, that appellant satisfied her initial burden of proving a prima facie case of age discrimination, the burden then shifted to appellee to articulate a legitimate non-discriminatory reasons for eliminating appellant's position:
 "Once a prima facie case has been established, a presumption of unlawful discrimination arises. Thus, in order to avoid an adverse result, the employer must present a legitimate, nondiscriminatory reason for the employee's discharge. Barker at 148, 451 N.E.2d 807. If the employer does advance permissible grounds for the termination, the employee then has the burden of proving that the reasons proffered by the employer were merely a pretext for intentional discrimination. Id. If the employee fails to establish a prima facie case of employment discrimination, or is unable to refute the employer's asserted lawful basis for the discharge, the employee's case will be dismissed. Id." (Emphasis added.) Burdine at 6.
In the instant matter, appellee demonstrated that its reason for changing the requirements of the position and eliminating appellant were legitimate and non-discriminatory. For instance, Mrs. Gould stated that PHTG became affiliated with University Hospitals of Cleveland and that in October 1996, Dr. Ross became a partner in the corporation. As a result of these new affiliations, and in an attempt to be more cost efficient, Mrs. Gould explained that the duties of appellant's former position were to be combined with other duties involving surgical assistance to create a new position. Appellant was never provided with the option to change her duties because, according to Mrs. Gould, they needed someone to work in the surgery room and be responsible for insurance billing.
Dr. Gould and Mr. Pinti also confirmed that the affiliation with Dr. Ross caused them to need "someone that could work as a secretary, work in the surgery rooms, and also help [Dr. Ross] with his patients in Cleveland and also do some insurance billing for him."
Thus, appellee offered some evidence that appellant's position was eliminated due to economic necessity and reorganization. Having sustained its burden of proof by presenting legitimate, non-discriminatory business reasons for eliminating the position, appellant retained the burden of proving that the reasons proffered by appellee were merely a pretext for age discrimination:
 "Pretext is established by either (1) a direct evidential showing that a discriminatory reason more likely motivated the employer or (2) an indirect evidential showing that the employer's explanation is not credible. * * * `Mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Branson v. Price River Coal Co. (C.A.10, 1988), 853 F.2d 768, 772." (Emphasis added.) Bentley at 6. See, also, Plumbers Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm. (1981), 66 Ohio St.2d 192, 198, citing McDonnell at 804-805.
Our review of the evidence submitted by appellant in response to appellee's motion for summary judgment indicates that she failed to present any evidence to rebut appellee's claim that as a result of the affiliation with University Hospital of Cleveland and Dr. Ross, her position was eliminated and a new position with additional technical/surgical responsibilities was created. While it is unclear whether appellant's former position involved more than secretarial duties, appellant failed to present evidence tending to show that she was professionally qualified by training and experience as a technician under the new position guidelines.
In summation, we conclude that appellant failed to establish a prima facie case for age discrimination and failed to create a genuine issue of material fact as to whether the non-discriminatory reasons for her discharge advanced by appellee were merely pretextual. See, generally,Bundy v. Systems Research Laboratories, Inc. (May 3, 1996), 2nd Dist. No. 95-CA-71, 1996 WL 220892. In other words, appellant offers no evidence that her age was the reason she was fired.
Based on the foregoing analysis, appellant's lone assignment of error is without merit, and the judgment of the trial court is affirmed.
ROBERT A. NADER, J., DIANE V. GRENDELL, J., concur.
[1] Although University Hospitals of Cleveland, Inc., was initially named as a co-defendant in this matter, the record reflects that on March 28, 2000, appellant voluntarily dismissed this party from the instant action pursuant to Civ.R. 41(A)(1)(a).
[2] Appellant further alleged that there was a breach of an oral five-year contract for employment, and that appellee's conduct of terminating her employment constituted intentional infliction of emotion distress. Ultimately, the trial court granted summary judgment in favor of appellee as to these claims. However, on appeal, appellant does not challenge the trial court's disposition of these claims.
[3] These unfiled and uncertified depositions were attached to appellee's motion for summary judgment without objection as to their form or substance. As such, these depositions could be considered or not at the discretion of the trial court. Trimble-Weber v. Weber (1997),119 Ohio App.3d 402, 406; Koeth v. Time Savers, Inc. (May 26, 2000), 11th Dist. No. 99-G-2211, 2000 Ohio App. LEXIS 2273, at 12, fn. 2; Al-Najjarv. R S Imports, Inc. (Aug. 29, 2000), 10th Dist. No. 99AP-1391, 2000 WL 1220741, at fn. 1. A review of the trial court's judgment entry indicates that the court apparently reviewed and considered these depositions.
[4] Appellant is, however, barred from bringing a Greeley claim based upon the public policy embodied in R.C. 4113.51 et seq., as she failed to comply with the dictates of the statute. Kulch v. Structural Fibers,Inc., 78 Ohio St.3d 134, 153, 162, 1997-Ohio-219.
[5] Recently, in Pytlinski v. Brocar Products, Inc., 94 Ohio St.3d 77,80, fn. 3, 2002-Ohio-66, the Supreme Court of Ohio noted that "[t]he elements of the tort do not include a requirement that there be a complaint to a specific entity, only that the discharge by the employer be related to the public policy."
[6] As an aside, we note that there seems to be a factual conflict as to whether this medical procedure allegedly witnessed by appellant ever occurred. This, however, does not have an impact on the outcome of this appeal. This is because we are concerned with the first prong of theGreeley claim, to wit: identifying a clear public policy, which is a question of law. Kulch at 151.
[7] Pursuant to R.C. 4112.01(A)(14), the protected class includes persons at least forty years of age. According to Mrs. Gould, appellant's replacement, Vicki Baxter ("Ms. Baxter"), was thirty-six or thirty-seven years old.