OPINION
{¶ 1} Appellant, David J. McNett ("McNett"), appeals the June 2, 2004 judgment of the Common Pleas Court of Allen County granting summary judgment in favor of Appellee, Hardin Community Federal Credit Union (Hardin Credit Union").
 {¶ 2} McNett was hired for the position of collection manager at Hardin Credit Union on August 12, 2002. The position of collection manager was primarily created to deal with the rise in Hardin Credit Union's delinquency rate with respect to loan payments. The organizational structure of Hardin Credit Union provided that McNett would report to Cinda Terrill ("Terrill"), the lending manager. Shortly after he began working at Hardin Credit Union, McNett met with Matthew Jennings ("Jennings"), CEO of Hardin Credit Union, to discuss who McNett should report to at the company. McNett did not want to report to Terrill, stating it was a conflict of interest with his position as collection manager. Jennings approved McNett reporting directly to him. However, Jennings expressed displeasure with McNett's refusal to follow the organizational structure to Hardin Credit Union's Board of Directors at the September 2002 board meeting. At least one board member supported McNett's termination based upon his refusal to report to Terrill. Jennings also drafted a memorandum describing McNett's insubordination which was placed in McNett's personnel file.
 {¶ 3} It is not disputed that Hardin Credit Union had a longstanding policy of extending member loan due dates in cases where the member showed financial hardship. This policy required only that interest payments be made by the member during the extension period. It is also undisputed that Hardin Credit Union's policy concerning loan due date extensions was not always properly followed. There are documented cases in the record that indicate Hardin Credit Union approved loan extensions without requiring the member to make interest payments, which was against credit union policy. The purpose of the financial hardship policy was to assist members in times of financial distress. However, Jennings acknowledged that the policy also had the unintended effect of keeping particular loans from appearing on Hardin Credit Union's delinquency reports. When a loan payment due date was extended by a teller or loan officer, Hardin Credit Union's computer system generated a "CPC+" transaction code in the member's loan record.
 {¶ 4} As part of his employment duties, McNett was instructed to put his effort into collecting on the delinquent loans and reducing the number of loans on the delinquency list. McNett became concerned with Hardin Credit Union's practice of extending loan payment due dates and the consequences of this practice. However, McNett did not bring his concerns directly to the attention of Jennings. Rather, on September 30, 2002, McNett sent handwritten letters to the personal residences of two members of Hardin Credit Union's Board of Directors explaining his job duties and the progress he and the employees he supervised had made. While McNett did mention the substantial increase in loan payment delinquencies that occurred over the course of one month, McNett did not mention his suspicions regarding the improper use of the "CPC+" transaction code by Hardin Credit Union employees. McNett did not advise Jennings, or any other Hardin Credit Union employee, that he had sent the letters to the board members. Neither board member contacted McNett regarding the letter; however, both board members approached Jennings and expressed that they were upset with the manner in which McNett had contacted them.
 {¶ 5} The National Credit Union Administration ("NCUA") also began its yearly investigation of Hardin Credit Union in September of 2002. While NCUA examiners were in Jennings' office on October 3, 2002, McNett entered the office to speak with Jennings. McNett proceeded to discuss the jump in the delinquency loan rate with Jennings in front of the NCUA examiners. An NCUA examiner requested the most recent delinquent loan report after hearing McNett's discussion with Jennings. McNett then contacted NCUA examiner Ralph Cave ("Cave") and asked to privately meet with him. McNett and Cave met on October 4, 2002 in Cave's hotel room. At the meeting, McNett informed Cave of the use of "CPC+" codes and loan due date extensions by Hardin Credit Union employees. McNett also provided Cave with documents that showed the use of "CPC+" codes by Hardin Credit Union. McNett asked Cave not to disclose to anyone at Hardin Credit Union that he had met with Cave and discussed information regarding Hardin Credit Union's practice of extending loan due dates. Cave agreed not to disclose the information and stated in his affidavit that he had not disclosed McNett's concerns or the fact that he had met with McNett to any employee, officer, director or board member of Hardin Credit Union. McNett did not provide that he had reason to believe that Cave had disclosed any information.
 {¶ 6} Cave continued his investigation of Hardin Credit Union. Cave asked Terrill what the "CPC+" codes meant. Terrill informed Cave that when a member's loan due date was extended by a teller, the computer generated a "CPC+" transaction code on the member's record. Terrill stated in her affidavit that the NCUA examiners did not mention McNett's name in connection with their inquiries regarding "CPC+" code transactions.
 {¶ 7} On October 15, 2002, the Hardin Credit Union Board of Directors held a board meeting. McNett's action of sending the handwritten letters to two board members was discussed. Mr. Clark, president of the board of directors, stated in his affidavit that the board members felt McNett's behavior was unprofessional and upsetting. There was a consensus among the board members that McNett's employment with Hardin Credit Union should be terminated. However, the board left the decision of how to handle McNett's actions to Jennings' discretion.
 {¶ 8} On October 17, 2002, McNett was terminated from his position as collection manager with Hardin Credit Union. McNett's termination letter cited his insubordination in failing to follow the Hardin Credit Union chain of command and in sending letters to the personal residences of two board members as the reasons for his termination. After McNett's termination, Hardin Credit Union received the NCUA's examination report which requested that the Credit Union immediately discontinue its practice of extending loan due dates. Hardin Credit Union complied with the NCUA's recommendation and discontinued its due date extension policy.
 {¶ 9} McNett filed a complaint against Hardin Credit Union on December 5, 2002 in the United States District Court, Northern District of Ohio. McNett's complaint claimed Hardin Credit Union violated the Federal Credit Union Act, 12 U.S.C. § 1790b and Ohio's public policy pursuant to Painter v. Graley,70 Ohio St.3d 377, 1994-Ohio-334, 639 N.E.2d 51. The district court granted summary judgment in favor of Hardin Credit Union with respect to McNett's claim under 12 U.S.C. § 1790b. The district court then dismissed the case for jurisdiction after denying Hardin Credit Union's motion for summary judgment on McNett's state claim for wrongful termination in violation of Ohio's public policy. See McNett v. Hardin Community Federal CreditUnion (N.D.Ohio 2003), Case No. 3:02 CV 7576.
 {¶ 10} On September 29, 2003, McNett filed a complaint in the Common Pleas Court of Allen County raising a state claim for wrongful termination in violation of Ohio's public policy. Hardin Credit Union filed a motion for summary judgment on March 9, 2004. McNett filed a Memorandum Contra Hardin Credit Union's motion for summary judgment on March 25, 2004. On June 2, 2004, the trial court granted Hardin Credit Union's motion for summary judgment holding that McNett did not meet the requirements of R.C. 4113.52, Ohio's whistleblower statute. It is from this judgment that McNett now appeals asserting the following two assignments of error.
The trial court erred in requiring appellant's strictcompliance with Ohio's whistleblower statute as opposed tocorrectly holding that Ohio's public policy favoring thereporting of criminal practices precluded appellee's terminationof appellant for the reporting of appellee's corrupt practicesand, therefore, the trial court erroneously misapplied Ohio'spublic policy tort law.
 The trial court erred in granting judgment to appellee becausethe trial court improperly applied res judicata and failed toadopt the decision of the federal court which found thatappellant had a basis for his public policy tort claim.
 {¶ 11} We begin by noting that the standard for review of a grant of summary judgment is one of de novo review. Lorain Nat'lBank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129,572 N.E.2d 198. Thus, such a grant will be affirmed only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id.
 {¶ 12} The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits[.]" Civ.R. 56(B). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." Mitseff v. Wheeler (1988),38 Ohio St.3d 112, syllabus, 526 N.E.2d 798. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. Murphy v.Reynoldsburg, 65 Ohio St.3d 356, 360, 1992-Ohio-95,604 N.E.2d 138. Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the non-moving party to show why summary judgment in favor of the moving party should not be granted. See Civ.R. 56(E). In fact, "[i]f he does not so respond, summary judgment, if appropriate, shall be entered against him." Id.
 {¶ 13} In his first assignment of error, McNett argues that the trial court erroneously interpreted and applied Ohio's whistleblower statute, R.C. 4113.52. McNett argues that the trial court applied a strict statutory review of his claim in contravention of the Ohio Supreme Court's intent in Kulch v.Structural Fibers, Inc., 78 Ohio St.3d 134, 1997-Ohio-219,677 N.E.2d 308. In his second assignment of error, McNett argues that the trial court misunderstood the claim McNett raised before the court, treating the claim as one raised pursuant to the Federal Credit Union Act rather than one raised pursuant to Ohio public policy, and erroneously held that the doctrine of res judicata barred the claim.
 {¶ 14} In his complaint in the Common Pleas Court of Allen County, McNett raised an Ohio public policy tort claim asserting that there was a clear public policy pursuant to12 U.S.C. § 1790b and other federal and state law prohibiting retaliatory conduct to employees who provide information to the NCUA. McNett argued that his termination resulted from his disclosure of Hardin Credit Union's policy of extending loan due dates to NCUA examiners. Thus, McNett's claim asserted that he was wrongfully discharged in violation of Ohio public policy.
 {¶ 15} Ohio employment law is based on the premise that employers have the right to discharge employees at will. Mers v.Dispatch Printing Co. (1985), 19 Ohio St.3d 100, 103,483 N.E.2d 150. However, "[p]ublic policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute."Greeley v. Miami Valley Maint. Contrs. Inc. (1990),49 Ohio St.3d 228, 551 N.E.2d 981, paragraph one of the syllabus. The Court in Greeley also recognized that the public policy exception to the employment-at-will doctrine need not be premised solely upon a violation of a specific statute. Id. at paragraph three of the syllabus; Kulch, 78 Ohio St.3d at 149-150. Ohio case law clearly recognizes that public policy may be ascertained from a statutory provision or from any number of other sources.Kulch, 78 Ohio St.3d at 150.
 {¶ 16} In his original complaint in the United States District Court for the Northern District of Ohio, McNett brought a claim under 12 U.S.C. § 1790b, the whistleblower provision of the Federal Credit Union Act, and a claim under Ohio public policy. After determining that McNett's claim under12 U.S.C. § 1790b failed due to the lack of evidence in the record showing that anyone at Hardin Credit Union knew of McNett's disclosure of information to NCUA examiners prior to his termination, the district court dismissed McNett's Ohio public policy claim for lack of jurisdiction. The district court noted that the facts of the case as argued in the pleadings before the court "might arguably give rise to the public policy claim" and the court did not grant summary judgment in favor of Hardin Credit Union with regard to the claim. However, the district court did not address the state public policy claim on its merits and the court's treatment of the claim merely preserved McNett's right to raise the claim in state court.
 {¶ 17} The following analysis is used in determining whether a plaintiff has a viable common-law cause of action underGreeley and its progeny for tortuous wrongful discharge in violation of public policy:
1. That [a] clear public policy existed and was manifested ina state or federal constitution, statute or administrativeregulation, or in the common law (the clarity element).
 2. That dismissing employees under circumstances like thoseinvolved in the plaintiff's dismissal would jeopardize the publicpolicy (the jeopardy element).
 3. The plaintiff's dismissal was motivated by conduct relatedto the public policy (the causation element).
 4. The employer lacked overriding legitimate businessjustification for the dismissal (the overriding justificationelement). (Emphasis sic.)
Kulch, 78 Ohio St.3d at 151, citing H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-399.
 {¶ 18} The clarity and jeopardy elements of the tort of wrongful discharge are questions of law to be determined by the court. Kulch, 78 Ohio St.3d at 151, citing Collins v.Rizkana, 73 Ohio St.3d 65, 70, 1995-Ohio-135, 652 N.E.2d 653. Conversely, the causation and overriding justification elements are questions of fact for the trier-of-fact. Id. We will now review McNett's public policy claim under the analysis set forth in Kulch.
 {¶ 19} Our first inquiry, pursuant to the clarity element, is whether a clear public policy existed and was manifested in Ohio law. While McNett raised an Ohio public policy tort claim, he cited to 12 U.S.C. § 1790b as a source of manifestation of clear public policy in Ohio. McNett's claim under 12 U.S.C. § 1790b was fully disposed of by the U.S. District Court in its memorandum opinion in which summary judgment was granted in favor of Hardin Credit Union. Any claim with regard to this statute is now barred by res judicata. "A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Twp.,73 Ohio St.3d 379, 1995-Ohio-331, 653 N.E.2d 226, syllabus. This doctrine applies to claims litigated to finality in federal district court and subsequently brought in state court when the state claim involves a cause identical to that which was previously litigated in federal court and involves the same parties or those in privity with them. Rogers v. Whitehall (1986),25 Ohio St.3d 67, 494 N.E.2d 1387.
 {¶ 20} While the trial court analyzed McNett's public policy claim under R.C. 4113.52, McNett argues that he did not raise his public policy claim under any specific statute. McNett asserts that he filed his cause of action as a common law public policy tort and that the trial court erred in analyzing his claim under R.C. 4113.52. McNett correctly sets forth the proposition of law that R.C. 4113.52 does not preempt a common law cause of action against an employer that discharges an employee for a reason that contravenes clear public policy. See Kulch,78 Ohio St.3d at 150. Further, McNett correctly notes that a plaintiff may bring a cause of action pursuant to a statutory violation, a cause of action based on common law tort or a cause of action for both; however, a plaintiff is not entitled to recovery under both causes of action. Id. at paragraph five of the syllabus.
 {¶ 21} McNett was entitled to bring a public policy tort claim against Hardin Credit Union, regardless of whether he complied with R.C. 4113.52, as long as he could identify a source of public policy separate from the public policy embodied in R.C.4113.52. Iberis v. Mahoning Valley Sanitary District, 11th Dist. No. 2000-T-0036, 2001-Ohio-8809, citing Doody v. CenteriorEnergy Corp. (2000), 137 Ohio App. 3d 673, 739 N.E. 2d 851. Therefore, in order to succeed in his public policy tort claim of wrongful discharge, McNett had to show that his termination from Hardin Credit Union violated some clear public policy in Ohio not outlined in R.C. 4113.52.
 {¶ 22} McNett argues that "Ohio law has a clear public policy in favor of reporting possible law violations." Brief of Appellant, p. 21. McNett lists the following statutes that deal with reporting suspected criminal activity and cooperating with law enforcement officials as public policy that governs this case: R.C. 2921.22(A) ("failure to report a crime or knowledge of a death or burn injury"); R.C. 2921.23(A) ("failure to aid a law enforcement officer"); and R.C. 2921.31(A) ("obstructing official business"). These statutes are only minimally related to the facts in this case. Other than casually mentioning these above criminal statutes, McNett does not set forth the clear public policy in Ohio governing the facts of this case. Rather, McNett merely indicates "there exists sufficiently clear `public policy' from a variety of other legal and administrative sources for prohibiting an employer from terminating an employee for reporting possible violations of any law or regulation by the credit union to the NCUA or the Credit Union's Board members." Brief of Appellant, p. 22.
 {¶ 23} McNett points out several times in his brief that the trial court erred in applying the elements of R.C. 4113.52 to his public policy claim. However, McNett does not provide the clear public policy which the Court should have relied upon. The facts presented in the record and McNett's assertions regarding Hardin Credit Union's conduct describe a cause of action that is encompassed by R.C. 4113.52. The criminal statutes and case law that McNett relies upon do not support his contentions that a clear public policy exists separate from the dictates of R.C.4113.52.
 {¶ 24} Even if this Court were able to find a clear public policy in Ohio governing the facts of this case, McNett's public policy tort would necessarily fail on another element of the analysis set forth in Kulch. There are no genuine issues of material fact regarding the causation element, i.e. that McNett's dismissal was motivated by conduct related to the public policy. The United States District Court found that the record was devoid of any evidence showing that anyone at Hardin Credit Union was aware of McNett's disclosures to NCUA examiners prior to his termination.
Plaintiff has admitted that he did not report his suspicionsregarding the CPC+ codes and advancement of loan due dates toJennings or anyone else on the Credit Union's board of directors.Plaintiff further acknowledges that he asked Cave not to revealthe fact that Plaintiff met with him, and Cave testified that hedid not disclose Plaintiff's complaints or the fact that he metwith Plaintiff to any employee, officer, director or board memberat the Credit Union. Defendant has further provided depositiontestimony of the board members stating that they had no knowledgethat Plaintiff reported any wrongdoing to the NCUA. Plaintiff hasnot provided any evidence from anyone at the Credit Union statingthat they knew of Plaintiff's meeting with Cave. Plaintiffapparently would have the Court infer that certain employees knewof the meeting with examiner Cave, based on his complaint of`different treatment' after the meeting. However, the Court findsPlaintiff's vague complaint insufficient.
 McNett v. Hardin Community Federal Credit Union (N.D.Ohio 2003), Case No. 3:02 CV 7576, at 6.
 {¶ 25} Since McNett did not provide any new evidence when his claim was filed in the Common Pleas Court of Allen County, the findings of the U.S. District Court with respect to the issue of Hardin Credit Union employees' knowledge is supported by the record and precludes McNett from meeting the requirement of the causation element.
 {¶ 26} After reviewing the record in this case, we conclude that McNett has failed to present evidence establishing his claim of wrongful termination under Ohio public policy. Therefore, we hold that summary judgment was properly granted in favor of Hardin Credit Union. Accordingly, McNett's assignments of error are overruled.
 {¶ 27} Having found no merit with McNett's assignments of error, the judgment of the Common Pleas Court of Allen County is affirmed.
Judgment Affirmed.
 Shaw, P.J. and Cupp, J., concur.